995 F.2d 1065
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael Wayne WHITTAKER, Plaintiff-Appellant,
v.
HAPAG-LLOYD A.G., Defendant-Appellee.
 No. 92-2001.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1993
Decided: June 7, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Tommy E. Miller, Magistrate Judge. (CA-92-99-2)
 Argued: Jesse Marden Suit, III, Rutter & Montagna, Norfolk, Virginia, for Appellant.
 Carter Branham Furr, Jett, Berkley, Furr & Padgett, Norfolk, Virginia, for Appellee.
 On Brief: R. Arthur Jett, Jr., Jett, Berkely, Furr & Padgett, Norfolk, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 NIEMEYER, Circuit Judge:
 
 
 1
 Early on the rainy evening of March 3, 1990, Michael Wayne Whittaker, a longshore worker, slipped and fell while helping unload the M/V NURNBERG ATLANTIC, in Norfolk, Virginia. The ship was owned by Hapag-Lloyd A.G. Whittaker brought suit against Hapag-Lloyd, contending that it had negligently permitted a foreign substance, perhaps oil or grease, to exist on the ship's deck with inadequate lighting and that the negligence of the ship's crew caused his personal injury. The district court granted the shipowner's motion for summary judgment, finding that Whittaker had presented no evidence that his fall was caused by any negligence attributable to HapagLloyd. This appeal followed and we affirm.
 
 
 2
 A stevedore crew, composed of longshore workers hired by Old Dominion Stevedoring Corporation, which had a contractual agreement with Hapag-Lloyd to unload the M/V NURNBERG ATLANTIC, began the process of unloading the ship at 7:00 p.m. on the night in question. Whittaker was part of a "lashing gang" sent aboard to free cargo so that it could be unloaded. In order to release cargo, Whittaker's crew was charged with loosening the rods that held the cargo down during transport by manipulating turnbuckles on the rods.
 
 
 3
 Because the deck of the ship is often wet and can become slippery, the M/V NURNBERG ATLANTIC is equipped with catwalks for workers to travel over, with spaces built in to prevent water from collecting. At 7:45 p.m. on the day of the incident, although it was raining and had been for some time, Whittaker decided to take a short cut between turnbuckles rather than walking along the appropriate catwalk. Together with two coworkers, he climbed over a rail to get off the catwalk and took a more direct route over a metal hatch cover. Whittaker's coworkers later stated that the lights in the area they crossed were not working. As one of them described it, "We were aware that the area of the hatch was dark but were in a hurry to unlash the containers and climbed over a rail to get on to the hatch lid." Whittaker also stated the area he cut through had no working lights, characterizing it as "pitch black dark." There is no evidence that any lighting problem had been communicated to the ship's crew, although evidence was presented that a "header" (gang boss) employed by the stevedore was aware of the darkness: the header had used a flashlight to light his way through the area that evening. While hurrying across the rain washed deck, Whittaker slipped, fell, and injured himself.
 
 
 4
 Whittaker worked on for a while, then stopped and reported the accident, filling out a "Report of Personal Injury" form. The final question on the form read, "Did you slip on a foreign substance?" Whittaker left this space blank. The form continued,"If so, describe." Whittaker filled in, "Deck was wet and slippery." In his later deposition, Whittaker explained that he stepped in "a puddle of water, grease, or some substance of some kind and slipped." When pressed as to the substance's identity Whittaker admitted,"I don't know exactly what it was." When asked what he thought caused his injury, Whittaker replied, "As far as I'm concerned, there was no lighting there."
 
 
 5
 After the present litigation commenced, the two other members of Whittaker's lashing gang present at the time of his accident signed affidavits stating, respectively, that "there was oil or grease on the hatch cover of the ship when and where the Plaintiff, Michael Whittaker, fell," and "there was oil or grease, and water on the hatch cover where the Plaintiff fell at the time of the accident in suit." In more specific statements, however, both coworkers admitted that they did not observe grease at the specific spot where Whittaker slipped but only in the general area. The ship's crew acknowledged that the turnbuckles are kept greased, but they presented evidence that they routinely inspect the deck before unloading to make certain that there is no oil or grease on it.
 
 
 6
 The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., subjects a shipowner to liability only for its own negligence, not for that of any stevedore the shipowner employs. 33 U.S.C. § 905. As a result, a longshore worker injured by a condition encountered in an area under a stevedore's control must demonstrate two things in order to recover against a shipowner: (1) that the shipowner either failed to disclose a hidden hazard or was aware of a hazard so severe that it made the stevedore's decision to proceed with unloading the ship "obviously improvident," and (2) that the hazard in question caused the longshore worker's injuries. Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 175-76 (1981); Bonds v. Mortensen & Lange, 717 F.2d 123, 127 (4th Cir. 1983).
 
 
 7
 As the district court correctly determined, no evidence has been presented that these conditions are met in the present case. Whittaker relies upon unsupported speculation in claiming his fall was caused by oil or grease. Further, even if conditions were as he maintains, with readily observable oil or grease spots on the deck, this would support neither a finding that a hidden hazard was present nor a finding that the shipowner was aware of a condition so severe as to make the stevedore's decision to continue unloading operations "obviously improvident." Alternatively, if Whittaker's accident was caused by inadequate lighting, there is concededly no evidence of when the light for the area ceased working or what made it cease working. Finally, while there is evidence that the stevedore knew of both these hazards, there is none that the ship's crew knew of either.
 
 
 8
 Viewing the evidence in the light most favorable to Whittaker, we must nevertheless affirm the summary judgment in favor of the shipowner, Hapag-Lloyd.
 
 AFFIRMED